UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YUNG-CHIH CHEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>HAMILTON BEACH BRANDS HOLDING COMPANY, GREGORY H. TREPP, and MICHELLE O. MOSIER,<br><br>                                    Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Yung-Chih Chen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Hamilton Beach Brands Holding Company ("Hamilton" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Hamilton securities between February

27, 2020, and May 8, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Hamilton was founded in 1904 and is headquartered in Glen Allen, Virginia.  The Company, together with its subsidiaries, designs, markets, and distributes small electric household and specialty housewares appliances.  The Company sells its products through a network of mass merchandisers, e-commerce retailers, national department stores, variety and drug store chains, specialty home retailers, distributors, and other retail outlets.

3.     As a holding company, Hamilton primarily operates through its subsidiaries, which are located throughout the U.S. and internationally, including Mexico.  According to the Company's most recent annual report on Form 10-K, Hamilton has two Mexican subsidiaries— Grupo HB/PS S.A. de C.V. and Hamilton Beach Brands de Mexico S.A. de C.V.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Hamilton had inadequate disclosure controls and procedures and internal control over financial reporting, particularly with respect to one of its Mexican subsidiaries; (ii) consequently, the Company's accounting included certain irregularities with respect to the timing of recognition of selling and marketing expenses and the classification of certain expenditures within the statement of operations at this Mexican subsidiary, as well as potential misconduct with respect to the realizability of certain assets of the Mexican subsidiary; (iii) as a result of all the foregoing, Hamilton could not accurately attest to its financial results, particularly with respect to these

metrics, and was consequently at an increased risk of delaying the filing of its period reports with the SEC; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On May 11, 2020, during pre-market hours, Hamilton announced that it could not timely file its 1Q20 10-Q because of "certain accounting irregularities with respect to the timing of recognition of selling and marketing expenses and the classification of certain expenditures within the statement of operations at its Mexican subsidiary."  Hamilton further stated that its "Audit Review Committee has commenced an internal investigation" regarding "the realizability of certain assets of the Mexican subsidiary."

6.      Following these disclosures, Hamilton's stock price fell $1.03 per share, or 8.99%, to close at $10.43 per share on May 11, 2020.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to Hamilton's most recent annual

report on Form 10-K, as of February 21, 2020, there were 9,456,440 shares of the Company's Class A common stock outstanding.  Hamilton's Class A common stock trades on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Hamilton's Class A common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Hamilton securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Hamilton is a Delaware corporation with principal executive offices located at 4421 Waterfront Drive, Glen Allen, Virginia.  The Company's common stock trades in an efficient market on the NYSE under the ticker symbol "HBB."

14.     Defendant Gregory H. Trepp ("Trepp") has served as Hamilton's President and Chief Executive Officer at all relevant times.

15.     Defendant Michelle O. Mosier ("Mosier") has served as Hamilton's Senior Vice President, Chief Financial Officer, and Treasurer at all relevant times.

16.     Defendants Trepp and Mosier are sometimes referred to herein collectively as the "Individual Defendants."

4

17.     The Individual Defendants possessed the power and authority to control the contents of Hamilton's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Hamilton's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Hamilton, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     Hamilton and the Individual Defendants are collectively referred to herein as "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

<u>**Background**</u>

19.     Hamilton was founded in 1904 and is headquartered in Glen Allen, Virginia.  The Company, together with its subsidiaries, designs, markets, and distributes small electric household and specialty housewares appliances.  The Company sells its products through a network of mass merchandisers, e-commerce retailers, national department stores, variety and drug store chains, specialty home retailers, distributors, and other retail outlets.

20.     As a holding company, Hamilton primarily operates through its subsidiaries, which are located throughout the U.S. and internationally, including Mexico.  According to the Company's most recent annual report on Form 10-K, Hamilton has two Mexican subsidiaries— Grupo HB/PS S.A. de C.V. and Hamilton Beach Brands de Mexico S.A. de C.V.

**Materially False and Misleading Statements Issued During the Class Period**

21.     The Class Period begins on February 27, 2020.  On February 26, 2020, during after-market hours, Hamilton filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K").  For 2019, Defendants reported a net loss of $3.52 million, or $0.26 per diluted share, on revenue of $612.84 million, compared to a net income of $21.78 million, or $1.59 per diluted share, on revenue of $629.71 million for 2018.  Defendants also reported selling, general and administrative expenses of $91.302 million for 2019, compared to $97.964 million for 2018; total assets of $303.240 million for 2019, compared to $330.427 million for 2018; and amortization of intangible assets of $1.377 million for 2019, compared to $1.381 million for 2018.

22.     In comparing Hamilton's financial results for fiscal years 2019 and 2018, the 2019 10-K went into further detail concerning the Company's selling, general, and administrative expenses for the year, including the Company's advertising expenses.  Specifically, the 2019 10-K represented that "[t]he decrease in selling, general and administrative expenses was mainly attributable to a $5.2 million decline in environmental expense"; that this decline was the result of "the reduction to the environmental reserve at one site of $3.2 million related to a change in the expected type and extent of investigation and remediation activities and to a $1.5 million reduction in environmental expense," which was the result of "the probable recovery of investigation and remediation costs associated with the same site from a responsible party in exchange for release from all future obligations by that party"; that, "[a]dditionally, advertising expenses declined $3.1 million and employee-related costs decreased $2.0 million due to reduced incentive compensation expense"; and that "[t]hese decreases were partially offset by a one-time charge of $3.2 million recorded in the second quarter of 2019 for a contingent loss related to patent litigation."

23.     With respect to Hamilton's disclosure controls and procedures, the 2019 10-K assured investors, in relevant part, that "[a]n evaluation was carried out under the supervision and with the participation of the Company's management, including the principal executive officer and the principal financial officer, of the effectiveness of the Company's disclosure controls and procedures as of the end of the period covered by this report," and, "[b]ased on that evaluation, these officers have concluded that the Company's disclosure controls and procedures are effective."

24.     With respect to Hamilton's internal control over financial reporting, the 2019 10-K assured investors, in relevant part, that "[u]nder the supervision and with the participation of management, including the principal executive officer and principal financial officer, the Company conducted an evaluation of the effectiveness of internal control over financial reporting"; that this evaluation was "based on the framework in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework)"; that, "[b]ased on this evaluation under the framework, management concluded that the Company's internal control over financial reporting was effective as of December 31, 2019"; and that "[t]he Company's effectiveness of internal control over financial reporting as of December 31, 2019 has been audited by Ernst & Young LLP, an independent registered public accounting firm, as stated in its report, which is included in Item 15 of this Form 10-K and incorporated herein by reference."

25.     Additionally, the 2019 10-K assured investors that "[t]here have been no changes in the Company's internal control over financial reporting, that occurred during the fourth quarter of 2019, that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting."

26.     Appended as an exhibit to the 2019 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "[t]he [2019 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the [2019 10-K]."

27.     On February 27, 2020, Hamilton hosted an earnings call with analysts and investors to discuss the Company's fourth quarter and full year 2019 financial results.   On that call, Defendant Trepp represented that Hamilton's "international markets, in which we have a long-standing presence in [*inter alia*] . . . Mexico . . . have generated a compound annual growth rate of more than 5% in the past five years," and that, although "Mexico is further behind Canada as an industry, . . . it's just taken off in the past year to 18 months and the team has done a great job to be really on the forefront of that market."

28.     The statements referenced in ¶¶ 21-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Hamilton had inadequate disclosure controls and procedures and internal control over financial reporting, particularly with respect to one of its Mexican subsidiaries; (ii) consequently, the Company's accounting included certain irregularities with respect to the timing of recognition of selling and marketing expenses and the classification of certain expenditures within the statement of operations at this Mexican subsidiary, as well as potential misconduct with respect to the realizability of certain assets of the Mexican subsidiary; (iii) as a result of all the foregoing,

Hamilton could not accurately attest to its financial results, particularly with respect to these metrics, and was consequently at an increased risk of delaying the filing of its period reports with the SEC; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

29.     On May 11, 2020, during pre-market hours, Hamilton issued a press release announcing that it could not timely file its 1Q20 10-Q because of accounting irregularities at a Mexican subsidiary, and had launched an internal investigation into the realizability of certain assets at that subsidiary.  Specifically, that press release advised investors, in relevant part:

> Hamilton . . . announced today that it has filed a Form 12b-25 with the Securities and Exchange Commission for extension of time to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2020. During the quarter, the Company discovered certain accounting irregularities with respect to the timing of recognition of selling and marketing expenses and the classification of certain expenditures within the statement of operations at its Mexican subsidiary. The Company's Audit Review Committee has commenced an internal investigation, with the assistance of outside counsel and other third-party experts, which is primarily focused on realizability of certain assets of the Mexican subsidiary in order to determine the impact these matters may have on the Company's financial results. Net sales of the Mexican subsidiary represented approximately 7% of the Company's total net sales in 2019.
>
> The Company is working diligently to complete the investigation and file the Form 10-Q as soon as possible, but the Company does not anticipate that it will be in a position to file the Form 10-Q on or before the fifth calendar date following the required filing date as prescribed in Rule 12b-25. The Company will also delay its first quarter 2020 earnings release and investor conference call. The Company will issue a subsequent press release to announce the dates of the 10-Q filing, earnings release and investor conference call.

30.     Following these disclosures, Hamilton's stock price fell $1.03 per share, or 8.99%, to close at $10.43 per share on May 11, 2020.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Hamilton securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hamilton securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Hamilton or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Hamilton;

- whether the Individual Defendants caused Hamilton to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Hamilton securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

38.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Hamilton securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Hamilton securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

41.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hamilton securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Hamilton securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Hamilton securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Hamilton's finances and business prospects.

45. By virtue of their positions at Hamilton, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Hamilton, the Individual Defendants had knowledge of the details of Hamilton's internal affairs.

47.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Hamilton.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Hamilton's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Hamilton securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Hamilton's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Hamilton securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48.     During the Class Period, Hamilton securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Hamilton securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Hamilton securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Hamilton securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

51.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of Hamilton, and conducted and participated, directly and indirectly, in the conduct of Hamilton's business affairs.  Because of their senior positions, they knew the adverse non-public information about Hamilton's misstatement of income and expenses and false financial statements.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Hamilton's financial condition and results of operations, and to correct promptly any public statements issued by Hamilton which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Hamilton disseminated in the marketplace during the Class Period concerning Hamilton's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hamilton to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Hamilton within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hamilton securities.

55.     Each of the Individual Defendants, therefore, acted as a controlling person of Hamilton.  By reason of their senior management positions and/or being directors of Hamilton, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Hamilton to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Hamilton and possessed

16

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Hamilton.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  May 22, 2020                         Respectfully submitted,

                                             POMERANTZ LLP

                                             */s/ Jeremy A. Lieberman*
                                             Jeremy A. Lieberman
                                             J. Alexander Hood II
                                             600 Third Avenue, 20th Floor
                                             New York, New York 10016
                                             Telephone: (212) 661-1100
                                             Facsimile: (212) 661-8665
                                             Email: jalieberman@pomlaw.com
                                             Email: ahood@pomlaw.com

                                             POMERANTZ LLP
                                             Patrick V. Dahlstrom

10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
8240 Beverly Blvd., Suite 9
Los Angeles, California 90048
(310) 692-8883
lesley@portnoylaw.com

*Attorneys for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

**Hamilton Beach Brands Holding Company Securities Litigation**

I, Yung-Chih Chen, certify that:

1.  I have reviewed the complaint and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.  I am duly authorized to institute legal action against Hamilton Beach Brands Holding Company and other defendants.

3.  I did not purchase Hamilton Beach Brands Holding Company securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.  My transactions in Hamilton Beach Brands Holding Company securities during the class period set forth in the complaint are as follows:

    (See attached transactions)

6.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under the penalty of perjury that the foregoing are true and correct statements.


5/21/2020
_____
Date

DocuSigned by:

*Yung-Chih Chen*
84800014FECF40E...
_____
Yung-Chih Chen

**Hamilton Beach Brands Holding Company (HBB)**                    **Chen, Yung-Chih**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 5/4/2020 | Purchase | 100 | $12.3000 |
| 5/4/2020 | Purchase | 1,200 | $12.4000 |
| 5/4/2020 | Purchase | 467 | $12.3000 |
| 5/5/2020 | Purchase | 3 | $12.7500 |
| 5/5/2020 | Purchase | 800 | $12.7000 |
| 5/7/2020 | Purchase | 30 | $11.2000 |
| 5/8/2020 | Sale | (100) | $11.2500 |